**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES FIDELITY AND GUARANTY COMPANY (USF&G),**<br>    **Plaintiff**<br><br>    v.<br><br>**RR ENTERPRISES, INC., et al.,**<br>    **Defendants** | **Civil No. 03-1338 (SEC)** |

**MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION**

United States Fidelity and Guaranty Company (hereafter "USF&G") filed suit seeking recovery of monies expended by it pursuant to various payment and performance bonds it issued on behalf of RR Enterprises, Inc. **(Docket No. 1)**. Now before the Court are cross motions for Summary Judgment filed by USF&G and Defendants RR Enterprises, Inc., Angel M. Román-Cardona, Judith Rivera-Morales and the Conjugal Partnership constituted by them **(Docket Nos. 50, 52, 58, 67, 70, 75, 76)**.

On November 15, 2004, this case was reassigned to the undersigned for all further proceedings, including the trial and entry of judgment **(Docket No. 30)**. The undersigned, however, issues a report and recommendation inasmuch as, certain defendants have not appeared in the case and have defaulted. While consent to a magistrate-judge's designation can be inferred from a party's conduct during litigation, there can be no inference of conduct when a party that has been served, has not appeared and is in default. *See Roell v. Withrow,* 538 U.S. 580 (2003);

Civil No. 03-1338(SEC)                                                      Page -2-

*see also Henry v. Tri-Services, Inc*, 33 F.3d 931 (8th Cir. 1994) (magistrate-judge who entered a default judgment, lacked authority to enter final judgment where record contained no clear statement that party, who had not yet entered appearance in action when other parties agreed to have final judgment determined by magistrate-judge, ratified such agreement). Additionally, before a matter may be referred to a magistrate-judge for all proceedings, it is necessary "all parties have consented to the referral of the matter to a magistrate". Fed.R.Civ.P. 73. In this case all parties have not consented due to default of some of the named defendants. Accordingly, the undersigned issues a Report and Recommendation.

I. **Procedural and Factual Background**

Following are relevant undisputed facts. Other facts, unless otherwise noted, are derived from the complaint, exhibits and statements of facts submitted by the parties in the motions for summary judgment and oppositions thereto.

USF&G is the surety under an Indemnity Agreement to furnish performance and payment bonds on behalf of RR Enterprises, Inc. To induce USF&G to issue surety bonds to RR Enterprises, Inc., the named defendants to this action executed an Indemnity Agreement. Defendants Ricardo Elías-Fábregas, Jeannette Díaz-Deya, Angel M. Román-Cardona and Idith Rivera-Morales are the Indemnitors under the Indemnity Agreement. In reliance on the executed Indemnity Agreement, USF&G issued performance and payment bonds to RR

Civil No. 03-1338(SEC)                                                                                              Page -3-

Enterprises, Inc. for various construction projects that RR Enterprises, Inc. had entered into with the Municipality of San Juan. The four payment and performance bonds issued by USF&G are Nos. 45-0120-44464-99-4, 45-0120-44465-99-1, 45-0120-44466-99-7, and 45-0120-4446777-99-3. Each of the payments and performance bonds state that "[t]he performance and payments bonds furnished in conjunction with this service contract guarantee the physical completion of the work and the payment of all labor and material bills incurred in the performance of the contract." The Court was not provided with a copy of the underlying service contract between RR Enterprises, Inc. and the Municipality of San Juan.

> The Indemnity Agreement sets forth in pertinent part as follows:
>
> 6. The UNDERSIGNED will indemnify the SURETY and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which the SURETY may sustain or incur by reason of, or relating to, having executed or procured the execution of any such BOND, or that may be sustained or incurred by reason of making any investigation of any matter, or prosecuting or defending any action in connection with any such BOND, or recovering any salvage or enforcing any provision of this Agreement. The UNDERSIGNED shall pay to the SURETY all money which the SURETY or its representatives may pay or cause to be paid and shall pay to the SURETY such sum as may be necessary to exonerate and hold it harmless with respect to any liability which may be asserted against the SURETY as soon as liability exists or is asserted against the SURETY, whether or not the SURETY shall have made any payment therefor. In the event of any payment by the SURETY, the UNDERSIGNED further agrees that in any accounting between the SURETY and the UNDERSIGNED, the SURETY shall be entitled to charge for any and all disbursements made by it in good faith under the

belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. As used herein, "payments made in good faith" shall be deemed to include any and all payments made by the SURETY except those made with deliberate and willful malfeasance. The SURETY, in its sole discretion, from time to time may advance funds to or for the account of any CONTRACTOR for or relating to the completion of the work under any contract in connection with which it has executed or may execute a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT), and for the discharge of obligations incurred in connection therewith or relating thereto, and such advances shall be deemed "losses" under the terms of the Agreement whether or not such advances have been so used by the CONTRACTOR.

8.    The SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED.

9.    The vouchers or other evidence of payments made by the SURETY shall be *prima facie* evidence of the fact and amount of the liability of the UNDERSIGNED to the SURETY.

11.    The CONTRACTOR will furnish to the SURETY such information as it may request from time to time concerning any BONDED CONTRACT, and the CONTRACTOR hereby authorizes those with whom such contracts are made to furnish to the SURETY all information concerning such contracts and the work thereunder. The SURETY from time to time until its liability with respect to all such contracts is terminated, and until it shall have been fully reimbursed for all loss and expense which it may have paid in connection therewith, may examine the books and records of the CONTRACTOR. All persons, including credit reporting agencies, having or obtaining information concerning the financial affairs and operations of the UNDERSIGNED hereby are authorized and directed to disclose such information to the SURETY upon its request; and the SURETY and every such person hereby are released and discharged of any and all claims, liability and responsibility which they or any of them might otherwise incur or be subject to for or by reason of any such disclosure, or for or by reason

Civil No. 03-1338(SEC) Page -5-

>of the disclosure by the SURETY to others of any information obtained by it from any source whatsoever.

The terms of the Indemnity Agreement did not require the Surety to notify or obtain the named defendants' consent prior to settling or compromising any claim under the surety bonds.

On April 6, 2001, a letter was sent to the named defendants by St. Paul Surety (**Docket No. 70**, Ex. A). The letter to the Indemnitors states, "You have requested financial assistance from United States Fidelity & Guaranty Company for the purpose of completing the above projects and paying obligations to various subcontractors and suppliers of labor, material, and services used in the performance of the work on such projects incurred by RR Enterprises, Inc." *Id.* The RR Defendants admit that they executed the Indemnity Agreement but deny any legal obligation to reimburse the Surety, USF&G, for the losses sustained by USF&G as a result of the issuance of the bonds to RR Enterprises, Inc.

The complaint alleges that following the execution of the Indemnity Agreement and issuance of the surety bonds, RR Enterprises defaulted, failed to complete, failed to fulfill its contractual obligations or otherwise failed to perform on various contracts which resulted in USF&G being obligated to make payments on behalf of RR Enterprises. The complaint alleges that the Indemnitors are obligated to reimburse USF&G for the monies it expended, including interest, costs, expenses, charges and attorneys, yet they have failed and/or refused to do so.

Civil No. 03-1338(SEC) Page -6-

## II. Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir. 2004). When ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004). While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set

Civil No. 03-1338(SEC)                                                                                                                         Page -7-

forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vásquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

      **B.**      **Analysis**

USF&G moves for summary judgment on Count I of the complaint wherein it seeks indemnification and reimbursement against defendants RR Enterprises, Inc., Angel M. Román-Cardona, Judith Rivera-Morales and the Conjugal Partnership constituted by them (hereafter "RR Defendants"). USF&G contends that there are no genuine issues of material fact and because the liability issues are purely questions of law, the matter should be resolved by summary judgment. More particularly, USF&G contends that under the terms of the Indemnity Agreement, the RR Defendants are required to indemnify and reimburse it for all losses, costs, damages, attorneys' fees, disbursements and expenses incurred by the Surety by reasons of the execution and issuance of the surety bonds to the principal. It is USF&G's position that since the RR Defendants do not dispute that they executed the Indemnity Agreement or have conceded all of its terms by their failure to answer or respond to the

Requests for Admissions of USF&G, it is entitled to judgment as a matter of law.

The RR Defendants argue that summary judgment is appropriate on their behalf for three reasons. First, they contend there is no evidence that RR Enterprises, Inc. breached or defaulted on the contracts with the Municipality of San Juan which allegedly triggered USF&G to make payment on behalf of Defendants. Second, they argue that USF&G failed to establish how it was obligated to make payments on behalf of the defendants. And, third, they argue that under the Performance and Payment Bonds issued by USF&G, no right or action accrued to those entities to whom USF&G alleged to have made payment on behalf of Defendants. According to the RR Defendants, the Municipality of San Juan is the only beneficiary under the performance and payment bonds.

Initially the undersigned notes that there is no dispute that the performance and payment bonds were executed and the Indemnity Agreement was executed by the parties to this case.

In order to determine the parties actually guaranteed by a bond issued in connection with a public works contract, it is necessary to examine the statutory provision requiring the same, the terms of the contract as well as the bond instrument, since taken together they form a single instrument. *Cristy & Sánchez v. Commonwealth*, 84 P.R.R. 226 (1961). The parties have provided to the Court copies of the performance and

payment bond and the indemnity agreement, but not the underlying service contract with the Municipality of San Juan referred to in said bonds. Other court exhibits on file refer to the contract with the Municipality as, "Reverdecimiento San Juan Corredores Urbanos" which loosely translates into the beautification or planting of greenery in urban San Juan streets or alleys.

Puerto Rico law provides for indemnification, payment by the surety without notice and implicitly allows for a surety to compromise a debt. 31 P.R. Laws Ann. §§ 4911, 4912, 4913. Nonetheless, the RR Defendants have raised an issue questioning what parties are guaranteed by the payment and performance bonds, and contending it is only the Municipality of San Juan. Unfortunately, the Court does not have all the necessary documents before it to determine this issue, although the language of the payment and performance bonds "guarantee the physical completion of the work and the payment of all labor and material bills incurred in the performance of the contract". A letter issued by St. Paul by Surety also seems to indicate that the payment and performance bond covers "obligations to various subcontractors and suppliers of labor, material".

Had the undersigned an opportunity to review the underlying service contracts between RR Enterprises, Inc. and the Municipality of San Juan, summary judgment may be appropriate for USF&G. The Court, however, cannot speculate or theorize what such a document

might say and is not inclined to even make such an attempt. For this reason alone, USF&G's Motion for Summary Judgment **(Docket No. 50)** must be **DENIED**.

Like USF&G, summary judgment also is inappropriate for the RR Defendants. The RR Defendants rely heavily upon *Caguas Plumbing, Inc. v. Continental Constr. Corp.*, 2001 T.S.P.R. 164, 2001 WL 1618390 (Nov. 30, 2001) to support their position. *Caguas Plumbing*, however, is of no assistance to the RR Defendants. The case dealt with limitation periods and held that a surety has no obligation to make a claimed payment when suit was brought after the expiration of the bond term.

The RR Defendants are put on notice that normally in the case of a performance bond for public work, the surety company is liable also to subcontractor and supplier. *Montalvo & Comas Electric Corp. v. Commonwealth*, 107 D.P.R. 558 (1978). What this means is that there may be no merit to their position that the Municipality of San Juan is the sole beneficiary under the Performance and Payment Bond. More so, in light of the all-encompassing language in the Performance and Payment Bond that "The performance and payments bonds furnished in conjunction with this service contract guarantee the physical completion of the work and the *payment of all labor and material bills incurred in the performance of the contract*." (Court's emphasis). The very broad language of the Performance and Payment indicates that subcontractors are covered under its terms unless there is

contrary language in the main contracts between RR Enterprises, Inc. and the Municipality of San Juan.

The undersigned also finds curious the RR Defendants' position that there is no evidence that there was a breach of certain obligations which triggered payment by USF&G or that USF&G was obligated to pay on behalf of the RR Defendants. It was the RR Defendants who provided to the Court a copy of a letter which states that in relation to the bonds and contracts, financial assistance was requested to complete the projects and to pay obligations to various subcontractors and suppliers of labor, material and services used in the performance of the work on the projects incurred by RR Enterprises, Inc.

Another point raised by the RR Defendants' that is not well-taken is their position that to the extent that USF&G voluntarily made payments to third parties "it acted in error and it is not entitled to reimbursement under the Surety Agreement". The undersigned advises the RR Defendants to review paragraph 6 of the Surety Agreement which provides in pertinent part, "[i]n the event of any payment by the SURETY, the UNDERSIGNED further agree that in any accounting between the SURETY and the UNDERSIGNED, *the SURETY shall be entitled to charge for any and all disbursements made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed*. (Court's emphasis).

Civil No. 03-1338(SEC) Page -12-

Finally, the plain language of the Indemnity Agreement gives USF&G the authority to settle any claim, with no requirement of notice to USF&G. Paragraph 8 provides that "[t]he SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED." More so, Puerto Rico law also provides for settlement or compromise by a surety. 31 P.R. Laws Ann. § 4912.

Based upon the foregoing, it is therefore RECOMMENDED that the RR Defendants' Motion for Summary Judgment **(Docket No. 67)** be DENIED.

### III. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Motion for Summary Judgment field by United States Fidelity and Guaranty Company against Defendants RR Enterprises, Inc. and Angel M. Román-Cardona, Idith Rivera-Morales and the Conjugal Partnership Formed Among Them **(Docket No. 50)** be **DENIED**. **IT IS FURTHER RECOMMENDED** that the Motion for Summary Judgment of Defendants RR Enterprises, Inc. and Angel M. Román-Cardona, Idith Rivera-Morales and the Conjugal Partnership Constituted by Them **(Docket No. 67)** be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk

Civil No. 03-1338(SEC)                                                                                          Page -13-

of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986*); Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

    **SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 25th day of August, 2005.

                                                  **S/AIDA M. DELGADO-COLON**
                                                  **U.S. Magistrate-Judge**